## In re GLENS FALLS JOBBING HOUSE, Inc.

District Court, N. D. New York. March 30, 1928.

1. **Bankruptcy ⊜288(1)—Parties opening contempt proceedings in bankruptcy were bound by interpretation of proceedings expressed in stipulation.**

Where, after report of master finding officers of bankrupt corporation guilty of contempt, contempt proceeding was opened by stipulation to permit offering in evidence of record in proceedings in which the order allegedly violated was made, parties were bound by their interpretation of the proceedings as expressed by the stipulation.

2. **Bankruptcy ⊜288(1)—Officers of bankrupt corporation held not estopped by original contempt proceedings from denying possession of goods ordered turned over, where original proceeding was opened by stipulation.**

Officers and directors of bankrupt corporation *held* not estopped from denying possession of goods by former report of master finding them in contempt for failure to carry out order requiring them to turn over property, where parties stipulated that contempt proceeding should be opened and sent back to special master for introduction of further evidence.

3. **Bankruptcy ⊜288(14)—Evidence held insufficient to sustain master's finding of ability of officers of bankrupt corporation to carry out order for delivery of bankrupt's property.**

In contempt proceedings against officers and directors of bankrupt corporation for failure to turn over property of corporation in accordance with court's order, evidence *held* insufficient to sustain master's finding that officers had in their possession assets belonging to the corporation or avails thereof, enabling them to carry out court's order.

In Bankruptcy. In the matter of the Glens Falls Jobbing House, Inc., bankrupt. On motion of the trustee in bankruptcy for an order confirming the report of a special master adjudging certain officers and directors of bankrupt in contempt, and on motion of the officers for an order setting aside the master's report. Report of special master vacated and set aside.

A. Lee Olmsted, of Syracuse, N. Y., for trustee.

Roscoe Irwin, of Albany, N. Y. (Julius B. Sheftel, of New York City, of counsel), for respondents.

BRYANT, District Judge. The above matter is before the court upon two motions, one of the trustee in bankruptcy for an order confirming the report and findings of the special master adjudging that William I. Ginsburg and John Dever are in contempt of

court for their failure to comply with the provisions of a "turn-over order," and the other a motion of the said Ginsburg and Dever for an order vacating and setting aside the report of the special master.

The bankrupt, Glens Falls Jobbing House, Inc., was incorporated January 1, 1924. William Ginsburg, John Dever, and Arthur Solomon were the officers and directors. The concern conducted retail shoe stores in New York at Glens Falls, Hudson Falls, Troy, and Syracuse. On December 8, 1924, the corporation went into the hands of a receiver, and later the affairs of the corporation were taken over by the trustee in bankruptcy. Proceedings were had before the referee to compel Ginsburg, Dever, and Solomon to turn over property of the bankrupt corporation, alleged by the trustee to be in their hands, amounting to the sum of about $54,000. The said Solomon, under some arrangement, paid the trustee $1,500 and was released from any further liability. At the close of the hearing the referee, upon findings of fact and conclusions of law, entered an order adjudging that Ginsburg and Dever had in their possession, or under their control, merchandise belonging to the bankrupt estate amounting to $24,961.94, and directed the said William I. Ginsburg and John Dever to turn over the same, or, in lieu, its value. Thereafter the District Court modified the order of the referee by reducing the amount $3,500.

On application for order to punish for contempt, the matter was referred to a special master (the referee in bankruptcy who had made the previous order) to take evidence as to the ability or inability of said Ginsburg and Dever to comply with the order. The special master found that they were able to comply. Motion to confirm the report and to impose punishment was made, and while pending before the District Court an appeal from the "turn-over order" was taken to the Circuit Court of Appeals. Soon thereafter the decision in the Matter of J. H. Small Shoe Co. (C. C. A.) 16 F.(2d) 205, was published and the appeal was abandoned, the parties, upon their interpretation of that case, having, in lieu of appeal, entered into a stipulation providing that an order be made opening the contempt proceeding and sending it back to the same special master to permit the respondent to offer in evidence the record in the "turn-over" proceeding, together with such other evidence, not merely cumulative, as the respondents might desire. Under this order proceedings were had before the special master, and he made new

findings of fact and conclusions of law, which are now presented to this court through the two motions above referred to.

[1, 2] If it were not for the stipulation made by the parties and the order entered thereon, I would feel hesitant about the propriety of examining the "turn-over" order modified and confirmed by another judge of this court. From the wording of the order, made upon the stipulation, reopening the proceeding and sending it back to the special master it seems apparent that the judge intended the whole matter should be again considered upon the assumption that the measure of proof in the contempt proceeding must follow the criminal rule. Whether the criminal rule applies, i. e., beyond a reasonable doubt, was not stated by the judge granting the reopening order, and need not here be passed upon.

The parties by their stipulation and subsequent acts agreed that this rule should apply and now, that the appeal was abandoned and proceedings had in compliance with their interpretation as expressed by their stipulation, all parties are bound by that interpretation and the learned special master erred in holding that the respondents were estopped from denying possession of goods of the cost price and value of at least $21,461.94, as stated in his first conclusion of law. To thus hold seems to nullify completely the force of the stipulation and reopening order. The special master, however, apparently did not base his decision on the theory of estoppel for he makes findings of fact based on evidence contained in the "turn-over" order proceeding thus indicating that he considered the whole matter before him for decision. Therefore all the matters involved in the sufficiency of the turn-over order proceedings, the quantum of proof and the question of the ability or inability of the respondents to comply with the order are now before me on the two motions presented.

[3] Applying the law and procedure adopted by the parties to the facts in the case, I fail to find where the evidence sustains, with the quantum of proof necessary, the essential findings of fact upon which the conclusions of law are based. There is no direct proof of concealment. The decision is based upon an accountant's calculations supported by other circumstantial evidence. The referee in the turn-over proceeding (the special master in this proceeding), after a careful and exhaustive study of the accountant's figures and examination of a large number of witnesses found that goods, wares, and merchandise consisting of men's shoes, ladies' shoes, rubber boots, rubbers, slippers, ho-

siery, etc., amounting to at least the sum of $24,961.94 were unaccounted for. The amount was afterwards reduced by a judge of this court to $21,961.94.

He found that William I. Ginsburg and John Dever were in direct charge of the mercantile business, and in charge of all of the stores conducted by the corporation, selected most of the employees, purchased merchandise, superintended sales, and were responsible for the conduct of the business; that Arthur Solomon looked after the office work until about October when he became manager of the Syracuse store; that from the 1st of January, 1924, to about May, 1924, the corporation kept books and records showing the amount of daily sales and cost of goods sold at the various stores, also a perpetual inventory by a card system, and that the books of the corporation charged each store with the amount of merchandise received from Ginsburg and Dever and the purchases and the goods transferred from other stores; that about the 1st of May the keeping of a perpetual inventory was discontinued, and about August 8th the corporation ceased to keep any books, except a sales book and cash book; that until August 8th the corporation kept a record of the transfers of merchandise between the several stores; that throughout the whole time when the corporation was doing business Ginsburg and Dever were continuously and frequently carting merchandise, by automobile, from the several stores and the storehouse of the company, under claim that the merchandise was being transferred to other stores of the company; that subsequent to August 8th no record was kept of such transfers, and that an opportunity was thereby furnished them to abstract, carry away, and conceal the merchandise of the corporation.

From these facts, with others set forth in the findings, which are not necessary to be mentioned here, the special master finds that on June 30, 1927, the respondents had in their possession such property, and that by reason of such possession they were at that date able to comply with the turn-over order.

That goods remain unaccounted for seems clear. The fact that this small corporation lost nearly $100,000 in about 11 months in itself is sufficient to cause a careful scrutiny of the bankrupt and all persons connected therewith. The trustee, his attorney, and all connected with the bankrupt estate, were amply justified in the course taken. The special master, who was referee in the turn-over proceeding, as shown by his findings, has given this matter careful and exhaustive study, and his findings and conclusions carry great weight. With most of them I agree. I cannot, however, agree with him in the proposition that the property was traced into the possession of respondents with sufficient certainty to warrant jailing them for contempt. This contempt proceeding cannot be sustained upon the theory that respondents falsified the books of the corporation, violated the state Corporation Law, deceived creditors, wasted assets, formed a conspiracy to defraud, or that they have stolen assets of the corporation. The question is not, "Did the respondents fraudulently take assets of the corporation?" but rather, "Have they assets belonging to the corporation or the avails thereof?" I am compelled to hold that the evidence does not warrant the answering of the last question in the affirmative.

While it may be possible that the facts would have sustained some other form of action, I must hold, as stated before, that they do not with sufficient certainty prove present possession of the goods or ability to pay. Having reached this conclusion, it becomes unnecessary for me to pass upon the other questions raised on the motion. The report of the special master is vacated and set aside, and an order may be drawn accordingly.

In this case about 1,400 pages of evidence have been taken. Many witnesses have been examined and careful investigations made. Unless new facts have been discovered, I cannot see where anything can be gained by ordering a rehearing or allowing evidence to be taken before the court. If grounds exist that will warrant further proceeding, they will be considered by the court at time of submission of order, which is directed to be made upon notice.