LAUREL PARK, INC., ET AL. *v.* STANLEY J. PAC,
COMMISSIONER OF THE DEPARTMENT OF
ENVIRONMENTAL PROTECTION, ET AL.
(12467)
(12468)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued October 9—decision released December 25, 1984

*Christina G. Dunnell,* assistant attorney general,
with whom were *Barney Lapp,* assistant attorney gen-

eral, and, on the brief, *Joseph I. Lieberman,* attorney general, and *Daniel R. Schaefer* and *Henry S. Cohn,* assistant attorneys general, for the appellant (named defendant).

*Suzanne Y. Langille,* for the appellant (defendant Pollution Extermination Group, Inc.).

*Bourke G. Spellacy,* with whom were *Elizabeth C. Barton* and, on the brief, *James E. Schreiber,* for the appellee (named plaintiff).

*N. Warren Hess III,* for the appellee (plaintiff borough of Naugatuck).

SHEA, J. On March 12, 1984, the trial court, *Ripley, J.,* issued a temporary injunction staying an order of the department of environmental protection (DEP) that had closed the Laurel Park landfill located in Naugatuck. The granting of the plaintiff's application for a temporary injunction was appealed to this court pursuant to General Statutes § 52-265a and Practice Book § 3164.[1] We now find error in the issuance of the temporary injunction and remand for further proceedings.

---

[1] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the superior court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the supreme court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The chief justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the chief justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the chief justice, who shall thereupon call a special session of the supreme court for the purpose of an immediate hearing upon the appeal.

"(d) The chief justice may make orders to expedite such appeals, includ-

The plaintiffs in this action are Laurel Park, Inc., the owner and operator of a solid waste landfill facility, and the borough of Naugatuck, in which the Laurel Park landfill is located. The defendants are Stanley J. Pac, in his capacity as commissioner of the DEP, and the Pollution Extermination Group, Inc. (PEG), an intervening citizens group.[2] On October 13, 1983, DEP deputy commissioner John Anderson revealed that a small amount of 2, 3, 7, 8–tetrachlorodibenzo-p-dioxin (TCDD) had been detected in a water sample taken from the Laurel Park landfill. The sample was among twelve taken as part of an ongoing monitoring program of the Naugatuck River area by the DEP. It is undisputed that TCDD in some quantity is a dangerous substance. The dep-

---

ing orders specifying the manner in which the record on appeal may be prepared."

On March 23, 1984, the Chief Justice certified pursuant to § 52-265a that the issue presented "does involve 'a matter of substantial public interest . . . in which delay may work a substantial injustice.' "

The plaintiffs moved to dismiss the appeal on March 28, 1984, on the ground that this court lacks subject matter jurisdiction because the trial court's order did not constitute a final judgment and because of procedural and substantive deficiencies in the invocation of § 52-265a, as well as the claimed unconstitutionality of that section. On May 1, 1984, we denied the plaintiffs' motion to dismiss, but the plaintiffs in their brief have renewed the jurisdictional objections raised in the motion.

The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage of the proceedings. Practice Book § 3110. If at any point it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed. See *Christy Hill Builders, Inc.* v. *Hall,* 184 Conn. 575, 577 n.3, 439 A.2d 1065 (1981); *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979). We have concluded, however, that the "order or decision" referred to in § 52-265a from which an appeal may be taken need not be a final judgment, as the plaintiffs insist. Nor are we persuaded by their claims of procedural and substantive deficiencies in the application of § 52-265a to this case. Finally, the defendants' reliance on Practice Book § 3164 to expedite the appeal in addition to General Statutes § 52-265a (d) renders the plaintiffs' constitutional claim ineffectual. *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 529–31, 290 A.2d 327 (1971). Thus the appeal is properly before the court.

[2] PEG had participated in the administrative proceedings before the DEP, and its motion to intervene in this case was granted by the trial court on the first day of the hearing.

uty commissioner, invoking the power granted the DEP in General Statutes § 22a-7,[3] determined that continued operations at the Laurel Park facility "will result in or are likely to result in imminent and substantial damage to the environment or to public health" and ordered that the landfill immediately cease and desist from accepting and disposing of solid waste and propose a plan of testing and remedial action.[4] The Laurel Park landfill complied with this cease and desist order.

---

[3] General Statutes § 22a-7 provides: "The commissioner, whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment, will result in or is likely to result in imminent and substantial damage to the environment and it appears prejudicial to the interests of the people of the state to delay action until an opportunity for a hearing can be provided, may, without prior hearing, issue a cease and desist order in writing to such person to discontinue, abate or alleviate such condition or activity. Upon receipt of such order such person shall immediately discontinue, abate or alleviate or shall refrain from causing, engaging in or maintaining such condition or activity. The commissioner shall, within ten days of such order, hold a hearing to provide the person an opportunity to be heard and show that such condition does not exist. Such order shall remain in effect until ten days after the hearing within which time a new decision based on the hearing shall be made."

[4] The order was as follows:

"WHEREAS, Laurel Park, Incorporated is the owner and operator of a solid waste disposal facility on property listed in the Town of Naugatuck Land Records at Volume 158, Page 284; Volume 167, Page 578; Volume 160, Page 424; Volume 154, Page 289; Volume 168, Page 538; Volume 168, Page 37; Volume 174, Page 605; Volume 174, Page 603; and

"WHEREAS, the Commissioner of Environmental Protection has determined as shown by exhibits A and B which are attached hereto and made a part hereof that 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin is present in the groundwater beneath the above referenced facility, and that continued acceptance and disposal of solid waste at this facility will preclude efforts to determine the extent of the presence of such material and to implement remedial action and may add to the presence of such material; and

"WHEREAS, the Commissioner of Environmental Protection has found, after investigation, that unless immediate steps are taken to discontinue the acceptance and disposal of solid waste at, and properly close, the referenced facility, the condition and/or activities at this facility will result in or are likely to result in imminent and substantial damage to the environment or to public health; and

"WHEREAS, it is prejudicial to the interests of the people of the State

The cease and desist order noticed a hearing for October 20, 1983.[5] After six days of testimony, the hearing officer, a member of the DEP's adjudicative unit, issued proposed findings confirming that TCDD "is present in the groundwater at Laurel Park" and that "[t]he presence of this substance in any concentration at this landfill may reasonably be said to imperil public health and the environment . . . ." The hearing officer recommended that the cease and desist order remain in effect. He also recommended, however, that

of Connecticut to delay action until opportunity for a hearing can be provided:

"Now THEREFORE, pursuant to the authority vested in him by § 22a-7 of the Connecticut General Statutes, as amended, the Commissioner of Environmental Protection orders Laurel Park, Incorporated to accomplish the following:

"1. Immediately upon receipt of this order, cease and desist from accepting and disposing of solid waste at the above referenced facility.

"2. On or before November 15, 1983, submit for the review and approval of the Commissioner of Environmental Protection a plan which will provide for the proper closure of the above referenced facility.

"3. On or before December 31, 1983, verify to the Commissioner of Environmental Protection that the referenced facility has been properly closed in accordance with the approved plan.

"4. On or before January 31, 1984, submit for the review and approval of the Commissioner of Environmental Protection the results of a study detailing the extent of contamination of the disposal facility with 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin, and proposing remedial action.

"5. On or before February 29, 1984, verify to the Commissioner of Environmental Protection that remedial action including, if necessary, removal of the 2, 3, 7, 8-tetrachlorodibenzo-p-dioxin as directed by the Commissioner has commenced.

"6. On or before April 30, 1984, verify to the Commissioner of Environmental Protection that all remedial action has been completed.

"As provided by § 22a-7 of the Connecticut General Statutes, as amended a HEARING on this order will be held on Thursday, October 20, 1983 in Room 565, State Office Building, Hartford, Connecticut.

"Entered as an order of the Commissioner of Environmental Protection this Oct. 13, 1983."

The defendants admitted that portion of the plaintiffs' amended complaint alleging that deputy commissioner Anderson was acting as the designated agent of commissioner Pac on October 13, 1983.

[5] Both the borough of Naugatuck and PEG were made parties to the administrative proceeding between Laurel Park and the DEP.

the commissioner consider amending the order if further tests proved negative for TCDD and continued operation of the landfill facility would not interfere with the DEP's monitoring program. After oral argument, the defendant commissioner "adopted in its entirety" the proposed decision of the hearing officer. Noting that some additional test results were expected soon, the commissioner concluded that such results would not affect his decision because of the need for extensive testing to provide "conclusive evidence." Thus the proceedings at the administrative level ended with the cease and desist order still in effect for an indeterminate period of time.[6]

On November 21, 1983, two actions relating to the administrative proceedings were filed in the Superior Court. One was an appeal from the administrative action pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189.[7] In the other action, from which this appeal has ensued, Laurel Park and Naugatuck sought to enjoin the DEP's cease and desist order, claiming that issuance of the order deprived them of certain federal rights in violation of 42 U.S.C. § 1983, exceeded the DEP's statutory authority, and breached a contract previously entered into by Laurel Park and the DEP.[8]

---

[6] On November 14, 1983, Laurel Park requested reconsideration and vacation or amendment of the commissioner's decision after the DEP testing referred to by the commissioner in his order failed to confirm the presence of TCDD. Commissioner Pac took note of the results referred to by Laurel Park, but on December 1, 1983, he responded by declining to vacate or amend the cease and desist order, stating that additional testing was needed.

[7] General Statutes § 22a-389 authorizes appeals from decisions of the commissioner of the DEP in accordance with General Statutes § 4-183 of the UAPA.

[8] On February 1, 1983, a stipulated judgment was rendered by Judge Brennan of the Superior Court, terminating a prior civil action instituted by the DEP against Laurel Park. At the time the stipulated judgment was rendered, two other civil actions initiated by the DEP were pending, as were two administrative appeals filed by Laurel Park. These actions concerned the contamination of surrounding water by pollutants emanating

Other equitable relief, damages and attorney's fees were also claimed. The plaintiffs applied in this action for a temporary injunction and the trial court conducted a hearing which occupied seventeen trial days. The defendants objected to the temporary injunction proceeding on jurisdictional grounds, but their motion to dismiss based on the failure of the plaintiffs to exhaust administrative remedies was denied by the court on the first day of the hearing, December 2, 1983.[9] As the hearing progressed, the plaintiffs presented evidence, including many test results unavailable to the DEP when its order was finalized and thus not a part of the administrative record, that cast doubt upon the accuracy of the evidentiary basis for the DEP's order and the propriety of its continuance. On March 12, 1984, a decision was issued granting the plaintiffs' request for a temporary injunction to stay the effect of the DEP's cease and desist order, provided that the operation of the landfill would not interfere with ongoing testing at the site. The trial court retained jurisdiction to monitor developments in the case.[10] The

from the Laurel Park landfill. The terms of the stipulated judgment required Laurel Park to develop a water quality monitoring system, to install a leachate collection system, to provide the DEP with a performance bond or other surety, and to supply water to surrounding homeowners. As a result, both parties agreed to withdraw with prejudice their pending actions, and the DEP agreed that "as long as [Laurel Park] complies with the terms of this judgment, the [DEP] will refrain from instituting further legal action with respect to the subject matter of this judgment." Presumably it is upon this last portion of the stipulated judgment that the plaintiffs base their breach of contract claim.

[9] On December 2, 1983, the court also denied the defendants' motion to dismiss based on sovereign immunity and alleged procedural defects.

[10] Subsequent to Judge Ripley's order, the plaintiffs applied in their administrative appeal in the Superior Court for leave to present additional evidence before the DEP pursuant to General Statutes § 4-183 (e). They requested that the transcript of testimony and the exhibits presented at the hearing before Judge Ripley be made part of the record on appeal. The defendants opposed the plaintiffs' attempt to introduce into the administrative record in this manner the results of tests not available at the time of the DEP's initial ruling. On June 6, 1984, Judge Edelberg ordered that

effect of the temporary injunction was not stayed pending appeal.[11]

## I

The motion to dismiss that the trial court denied raised as a jurisdictional issue the alleged failure of the plaintiffs to exhaust their administrative remedy by pursuing the pending appeal from the commissioner's order to close the landfill. "When an administrative remedy is provided by law, relief must be sought by exhausting this remedy before resort to the courts." *McNish* v. *American Brass Co.,* 139 Conn. 44, 53, 89 A.2d 566 (1952), cert. denied, 344 U.S. 913, 73 S. Ct. 336, 97 L. Ed. 704 (1953). While recognizing this general rule, the trial court denied the motion to dismiss, concluding that the circumstances brought the case within an exception to the exhaustion doctrine "where: the constitutional propriety of an agency ruling is raised . . . ." *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 94, 448 A.2d 210 (1982); *Friedson* v. *Westport,* 181 Conn. 230,

the transcript and exhibits be incorporated into the administrative record and that, if the commissioner should require further hearing or argument, he might at his discretion so order.

[11] On a motion from the plaintiffs, the trial court on April 11, 1984, determined that, even if the stay provision in Practice Book § 3065 were assumed to be applicable to its temporary injunction, this was an appropriate case in which to exercise the discretion granted the trial judge in § 3065 to terminate the stay in furtherance of the "due administration of justice." The trial judge therefore terminated any existing stay. On April 13, 1984, the defendants petitioned in this court pursuant to Practice Book § 3067 for review of the April 11, 1984 decision. On April 25, 1984, the defendants moved for an order of compliance, claiming that the trial court's order of April 11 terminated a stay then in existence and thus was itself stayed under Practice Book § 3067 when the defendant moved for review. The defendants also moved pursuant to Practice Book § 3068 for a stay in this court in case there was no stay in existence below to be terminated by the trial court's April 11 order and, thus, there was nothing to review under that order. On May 1, 1984, we denied the relief requested by the motion for review, dismissed the motion for compliance as moot, and declined to order our own stay under Practice Book § 3068.

233, 435 A.2d 17 (1980). The court determined that, because the commissioner's order effectively terminated the plaintiffs' use of the property for all practical purposes while the appeal was pending, the administrative remedy was ineffective to protect their constitutional rights. Before us the plaintiffs make essentially the same contentions in support of the judgment as well as the denial of the defendant's motion to dismiss.

"We have frequently stated that when a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 598, 409 A.2d 1029 (1979); *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483 (1963). The underlying claim of the plaintiffs is that the order to close the landfill was issued without substantial support in the evidence before the commissioner.[12] A claim that the evidence does not support the findings or conclusions of an administrative agency is frequently the subject of an administrative appeal. See General Statutes § 4-183 (g) (5).[13] Similarly, the severe consequences which the plaintiffs would have suffered because of termination of the landfill operation pursuant to the commissioner's order are not substantially distinguishable from those which often attend a license suspension or

---

[12] The plaintiffs do not contend, nor could they, that any taking resulting from the cease and desist order, if reasonably necessary for the protection of the public welfare, is beyond the police power of the state. Cf. *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 167 Conn. 304, 307–308, 355 A.2d 247 (1974); *Amsel* v. *Brooks,* 141 Conn. 288, 292, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954).

[13] General Statutes § 4-183 (g) provides in part as follows: "The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ."

similar interference with the operation of a business resulting from a decision of an administrative agency. The UAPA contains provisions designed to protect the legitimate interests of persons appealing from agency decisions claimed to be arbitrary or unreasonable. General Statutes § 4-183 (c),[14] though providing that the filing of an appeal does not automatically stay enforcement of an agency decision, allows the reviewing court to order a stay upon appropriate terms. Despite the plaintiffs' protestations to the contrary, it is difficult to comprehend why a court would have been less inclined to order a stay of the commissioner's order upon a proper application in the pending administrative appeal than to issue a temporary injunction achieving the same result in a separate action. The same evidence presented to the court in this action would have warranted the same relief in the pending appeal if the plaintiffs had followed the procedure prescribed by the UAPA.

The plaintiffs have attempted to distinguish this case from other administrative appeals which allege an inadequate basis for an agency's finding upon the ground that subsequent developments after issuance of the commissioner's order, particularly the many test results failing to confirm the presence of TCDD at the landfill site, could not have been utilized in an administrative appeal, which is ordinarily limited to review of the record before the agency. We have previously held that a trial court has a responsibility to hear new evidence to ascertain whether the administrative action was legally warranted, especially where the record before the agency is uninformative and inadequate for adjudication of the issues raised. *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 120, 425 A.2d

[14] General Statutes § 4-183 (c) provides as follows: "The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms."

576 (1979); *Hotchkiss Grove Assn., Inc.* v. *Water Resources Commission,* 161 Conn. 50, 56–57, 282 A.2d 890 (1971). Express provision, moreover, is made in § 4-183 (e) of the UAPA for an application in a pending administrative appeal "for leave to present additional evidence, and [if] it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court." [15] Indeed the plaintiffs have employed this provision to obtain an order in the pending administrative appeal directing that the transcript of the hearing on the issuance of the temporary injunction in this case, as well as the exhibits, be incorporated into the administrative record, and also permitting the commissioner to order a further hearing or arguments.[16] Thus, it appears that the court reviewing the administrative appeal will have before it all of the evidence presented in the temporary injunction proceeding, a result which the plaintiffs could have achieved as readily by applying "for leave to present additional evidence" pursuant to § 4-183 (e) without commencing the injunction action. The plaintiffs have not sought the addition of more current developments to the administrative record. Although they assert that the factual scenario necessary to consideration of their claims was evolving on a weekly basis following the issuance of the commissioner's order, they

---

[15] General Statutes § 4-183 (e) provides as follows: "If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court."

[16] See footnote 10, supra.

have not demonstrated that § 4-183 (e) fails to provide an adequate means of bringing these subsequent developments into the record of the administrative appeal. Such evidence might as readily have been presented on a motion for a stay of the commissioner's order in that proceeding, as it was in seeking the temporary injunction.

The cases relied upon by the plaintiffs are readily distinguishable upon the ground that in all of them the available administrative remedy was either inadequate or futile for the purpose of providing the relief to which the claimant may have been entitled. In *Friedson* v. *Westport,* 181 Conn. 230, 435 A.2d 17 (1980), the plaintiff challenged the constitutionality of the zoning regulations relating to advertising as infringing upon his freedom of speech, an issue that could not readily have been raised in an appeal from the denial of his application for a variance. Similarly, in *Bianco* v. *Darien,* 157 Conn. 548, 254 A.2d 898 (1969), the failure of the plaintiffs to appeal an order of a zoning enforcement officer effectively determining that their property did not qualify for a nonconforming use did not preclude them from seeking relief based upon claims of estoppel and laches on the part of municipal officials. In *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979), it was also determined that the available administrative remedies were inadequate. In none of those cases was there available an administrative remedy capable of providing in an expeditious manner the relief sought in the separate action.

While we have held that a direct appeal is not necessarily "the exclusive route for testing basic constitutional infirmity"; *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979); we have consistently indicated that failure to take a direct appeal "forecloses collateral inquiry into the fact-finding by the administrative agency." Id. The issue

of "the constitutional propriety of an agency ruling," which the plaintiffs raise in order to bring themselves within the exception to the exhaustion doctrine recognized in *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* supra, 94, is here intertwined with the validity of the commissioner's finding concerning the presence of TCDD at the landfill sites. Since the plaintiffs are not entitled to a review of that finding in this separate action, their claim of an unconstitutional deprivation of their property rights cannot successfully be maintained in the case before us. *Connecticut Light & Power Co.* v. *Norwalk,* supra, 117. "This court . . . has repeatedly affirmed the principle that when an adequate administrative remedy is provided by law, it should be exhausted." *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977). We are persuaded that the UAPA adequately responds to the concerns of the plaintiffs about continued operation of the landfill pending an adjudication on the merits of the commissioner's order in the pending appeal as well as the continuing viability of that order in the light of later developments.

## II

The conclusion we have reached that the plaintiffs have failed to exhaust their administrative remedy would ordinarily require that the complaint be dismissed with respect to claims for any relief available in the administrative appeal. Accordingly all of the prayers for injunctive relief, which pertain generally to the continued operation of the landfill, would have had to be dismissed, leaving only the claims for damages, attorney's fees and costs.[17] The complaint in this

---

[17] The complaint makes the following claims for relief:

"1. A temporary and permanent injunction staying the operation of the cease and desist order issued October 13, 1983 and/or the Final Decision of November 4, 1983;

"2. A temporary injunction staying the operation of the cease and desist

action, however, includes a count raising a claim of "deprivation under color of state law in violation of 42 U.S.C. § 1983" of the federal constitutional rights of the plaintiffs.[18] The failure to exhaust a state administrative remedy has been held not to bar access to the federal courts in such a "civil rights" action. *Patsy* v. *Board of Regents of the State of Florida,* 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982). In the exercise of our concurrent jurisdiction under § 1983, this court has followed the federal determination that exhaustion of such an administrative remedy is not a prerequisite to judicial relief. *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 549, 473 A.2d 1176 (1984). The trial court did not err, therefore, in refusing to grant the motion to dismiss.

Although the inclusion of the § 1983 count has served to withstand the motion to dismiss, it is of no avail in

---

order issued October 13, 1983 and/or the Final Decision of November 4, 1983 pending adjudication of the appeal of said actions;

"3. A temporary and permanent injunction mandating the reopening of the facility in light of sample analyses since October 13, 1983.

"4. Money damages;

"5. Costs and reasonable attorney fees; and

"6. Such other relief as this Court may deem appropriate."

[18] It would be premature for us to consider the viability of this claim under the allegations of the complaint. See *Butz* v. *Economou,* 438 U.S. 478, 513–14, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). Neither at trial nor before us has the defendant commissioner raised a defense of qualified immunity for executive officials or absolute immunity for adjudicative and prosecutorial officials in support of the motion to dismiss. See *Harlow* v. *Fitzgerald,* 457 U.S. 800, 811, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Butz* v. *Economou,* supra, 512–14. The defense of sovereign immunity, which was raised in the motion to dismiss, is not available with respect to the claims for prospective injunctive relief. *Quern* v. *Jordan,* 440 U.S. 332, 338, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Edelman* v. *Jordan,* 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Sovereign immunity is also unavailable as a defense to a public official upon whom a complaint seeks to impose personal liability for damages resulting from a deprivation of federal rights under color of state law. *Scheuer* v. *Rhodes,* 416 U.S. 232, 238, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

supporting the issuance of the temporary injunction by the court. It does not appear that the trial court relied upon the possible viability of this count in rendering judgment. In any event, our conclusion that the same relief embodied in the temporary injunction, which merely stayed the commissioner's order subject to continued testing at the site, was available in the pending administrative appeal necessarily means that the plaintiffs had an adequate remedy in that action. The inadequacy of an available legal remedy is a standard prerequisite for injunctive relief. We do not view *Patsy v. Board of Regents of the State of Florida,* supra, as having abrogated this fundamental requirement for injunctive relief even in the federal courts. A fortiori, it remains a condition precedent to injunctive relief in a state court, since none of the concerns expressed in *Patsy* that warranted this exception to the exhaustion doctrine would be applicable where the same tribunal must determine the issues whether raised in an administrative appeal or in a separate action. See *Patsy v. Board of Regents of the State of Florida,* supra, 503–505. The impartiality or competence of federal as compared to state arbiters in deciding issues involving federal rights, from which spring the concerns[19] discussed in *Patsy,* is not an applicable consideration in this case where the determination must be made by the same court whether in the injunctive action or in the pending administrative appeal.

---

[19] Those concerns for continuance of the historic role of the federal courts as bastions for the protection of individual rights guaranteed by federal law against incursions by state officials would seem never to be relevant when a plaintiff chooses to vindicate such rights in a § 1983 action brought in a state court. *State ex rel. Basham* v. *Medical Licensing Board,* 451 N.E.2d 691, 694 (Ind. App. 1983). At this time, however, we need not reconsider the position we took in *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 549, 473 A.2d 1176 (1984), for the purposes of avoiding the incongruity that would result from imposing a procedural barrier in a state court which would not apply to the same action if brought in a federal court.

To the extent that the plaintiffs rely upon the count of the complaint alleging a breach of the February 1, 1983 agreement contained in a stipulated judgment,[20] our analysis is similar. Again the trial court does not appear to have relied upon this count as a basis for the temporary injunction. Again the availability of a stay of the commissioner's order in the pending administrative appeal precluded granting the same relief in the form of a temporary injunction in this action. The plaintiffs have failed to prove the inadequacy of their legal remedy.

There is error, the judgment is set aside and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.