[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON TOWN OF OXFORD'S MOTION FOR SUMMARYJUDGMENT
The plaintiff filed an action against the Town of Oxford on October 27, 1995. In that action, the plaintiff claimed her rights were violated under U.S.C. § 1983 because of the actions of three officials, Kontout, Korowotny and Lustig, who allegedly acted on behalf of the town. The third count of the amended complaint is against the town and alleges an unconstitutional taking under the federal constitution; the fourth count alleges an unconstitutional taking under the state constitution. The town has filed a motion for summary judgment. The rules to be applied with regard to the granting or denial of such motions are well known. It would appear that, in large part, the facts are not in dispute but rather that this motion must be decided based on disputed positions as to the law.
 I.
(A)
The defendant town has moved for summary judgment as to all counts against it on several grounds, one of which is that the claims made are barred by application of the three year statute of limitations, § 52-577 of the General Statutes. The town alleges that statute applies to a § 1983 action since Congress did not enact its own statute. Lownsbury v. Jeffries,25 F.2d 131, 133 (CA 2, 1994). Section 52-577 is a general or residual personal injury statute and thus should apply to claims made pursuant to 42 U.S.C. § 18. The defendant town argues that Kontout was the sanitarian for the Pomeraug Health District. Lustig was its health director. Korowotny was the only town official alluded to in the complaint and the last action he took — the issuance of the stop work order — occurred May CT Page 11599 28, 1991, as noted, suit was not brought until October 1995. Both sides agree that in fact § 52-577 does apply[1].
To determine the operation or the appropriate application of a limitations statute, it must by definition first be determined when the particular cause of action accrued. As far as a § 1983 action is concerned, although the state limitations statute applies, the question of accrual is properly a federal question under the supremacy clause of the federal constitution since the definition of the accrual of the action goes to the substantive nature of the federal claim; the federal cases so hold. Cornwellv. Robinson, 23 F.3d 694; 703 (CA 2, 1994). Such a claim accrues once the "plaintiff knows or has reason to know of the injury which is the basis of his (sic) action." Singleton v. New York,632 F.2d 185, 191 (CA 2, 1980). Ascertaining the implications of that phrase requires an examination of the "injury" claimed. Paragraph 13 of the third count (§ 1983 claim) in effect allege a "taking" of the property — the plaintiff alleges she was "deprived of any practical, beneficial or economic use of the subject property without the payment of compensation." If we keep in mind what the Singleton case is just quoted to have said, it can become quite confusing because another line of federal authority clearly states that the doctrine of exhaustion of administrative remedies does not apply to § 1983 claims.Patsy v. Board of Regents, 457 U.S. 496, 501 (1981); LaurelPark, Inc. v. Pac, 194 Conn. 677, 690 (1984). If this is read along with Singleton, the federal courts could become inundated with "taking" cases broadly defined. So what the Supreme Court did in Williamson Planning Commission v. Hamilton Bank,473 U.S. 172, 186-197 (1984) and Hodel v. Virginia Surface Mining Reclamation Assn., Inc., 452 U.S. 264, 297 (1981), is to narrow the definition of "taking". Thus, at 473 U.S. page 187, commenting on Hodel, the Hamilton Bank court said that the court "rejected a claim that (a federal act) effected a taking because there was no indication that the party claiming to be aggrieved availed themselves of an opportunity to obtain administrative relief." Or to put it another way, a taking claim is not ripe for review until the government agency charged with enforcing the regulations had made a final decision. The benefit of this is that, as the court says at 452 U.S. at page 297, "a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions."
What all this necessarily means is that, for all practical CT Page 11600 purposes, a taking claim is not ripe for review, hasn't accrued and cannot be prosecuted as a § 1983 action until an application to review the objected to action has been filed and finally processed — therefore the statute of limitations cannot run until all those events have transpired, cf. NorcoConstruction, Inc. v. King County, 801 F.2d 1143, 1145 (CA 9, 1986). Here it appears that the plaintiff claims her rights were violated by the revocation on May 28, 1991 of her right to use an existing cesspool on the subject property. It is further claimed that Kontout and Lustig participated in disapproving of other plans for an alternate septic system which did not conclude until the State Health Department rejected the plaintiff's appeal in November 24, 1994. The latter date is well within the ambit of § 52-577 since suit was commenced in October 1995[2]. The court concludes the § 1983 action is not barred by the limitations statute.
(B)
The claims under the state and federal constitution are inverse condemnation or taking cases and both sides agree that § 52-577 is the appropriate limitations statute to apply to these claims. Although the cases apparently fall into a different analytical pigeon hole, the just concluded reasoning would indicate there is no limitations problem as to these claims, either. The point is that a taking claim does not accrue until it is established that it is unlikely that no applications for use of the property will be approved and there is no meaningful use allowed for the property due to the regulations imposed. Aginsv. Tiburon, 447 U.S. 255, 260-63 (1980); Cioffeletti v.Planning Zoning Commission, 220 Conn. 362, 371 (1991). Here that cannot be said until the plaintiff's appeal was denied in November of 1994.
The court denies the statute of limitations defense as to the counts against the town but does not address or base its decision on the plaintiff's reliance on the continuing nature of the claimed wrongs as a means to avoid the operation of the statute.
(II)
The town has also filed a motion for summary judgment as to the 42 U.S.C. § 1983 claims made against it. A purely legal claim is made; the town argues that the plaintiff asserts her rights were violated through the acts or omissions of an employee CT Page 11601 Korowotny and two people the town clerk claims are non-employees, Kontout and Lustig. The town argues that "it is well established that there is no vicarious liability under § 42 U.S.C. § 1983." See Monell v. N.Y. City Dept. of Social Services,436 U.S. 658, 694 (1978), p. 6 of 6/4/97 brief. The defendant town argues also that, in any event, the town cannot be held responsible pursuant to a § 1983 action for Kontout's and Lustig's activities since they were not town employees. The court will deal first with the Monell claim.
The language of Monell must be examined carefully. The court said that "a municipality cannot be held liable soley
because it employs a tortfeasor." Id., p. 691. "Instead it is when execution of a government's policy or custom, whether made by the lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts injury that the government, as an entity, is responsible under § 1983." Id. p. 694. Later cases repeat this "municipal custom or policy" theme. See Gottlieb v. County of Orange, 84 F.3d 511, 518 (CA 2, 1996). The distinction between "policy" and "custom" was defined in Board of County Commissioners of Bryan County, Okla.v. Brown, 117 S. CT. 1382, 1388 where the court said: "Locating a `policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."
The court has refined this generalization over the years to mean that a § 1983 violation need not be based on the act of, for example, a municipal legislative body but the court has "assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." St. Louis v. Proprotnik, 485 U.S. 112, 123 (1988). The court said in Brown that: "To the extent that we have recognized a cause of action under § 1983 based on a single decision attributable to a municipality, we have done so only where the evidence that the municipality had acted and that the plaintiff had suffered a deprivation of federal rights also proved fault and causation." 117 S.Ct. at p. 1389, citing Owensv. Independence, 445 U.S. 622 (1980) and Pembaur v.
CT Page 11602Cincinatti, 475 U.S. 469 (1986). On the other hand, the court recognized that "the identification of policy making officials is a question of state law." Praprotnik at page 124.
As noted, the town also makes the argument that Kontout and Lustig were not town employees. Clearly, if they were not town employees the town is not liable under § 1983 apart from the necessity of conducting a Monell analysis which deals with the issue of municipal vicarious liability for acts of its employees.
The court will apply these principles in the following discussion of the claims and facts of this case.
The court finds the summary judgment motion cannot be granted for several reasons. The affidavit of the first selectman states Kontout and Lustig are not town employees but they are listed as such in the registrar published by the Secretary of the State. Besides the Public Health District for whom these individuals undisputably work is formed and operated by directors appointed by towns within the district, the towns pay a proportionate share of district expenses and the directors of health exercise all the authority as to public health required of or conferred upon constituent municipalities. §§ 19-241, 19-243. A city's lawful policy maker cannot insulate a municipality from liability simply by delegating their policy making authority. The court has no idea about what the voting structure of the health district is, how many towns are involved or how much involvement the towns through their own officials maintain in the day to day operation of the Health District. All of this raises issues of fact or, if it is an issue of law, enough subsidiary facts have not been presented to resolve it.
The defendant town makes the further argument at page 9 of its brief that, even if Kontout and Lustig were to be considered town employees, no official policy of the town has been identified as having deprived the plaintiff of her constitutional rights. The only policy which has restricted the plaintiff in her use of the property is the Public Health Code which is a state law. Thus, Lustig and Kontout are agents of the state[3]. That is, these two individuals, even if they could be defined as town officials, were not enforcing a policy of the town but of the state and a municipality can be held liable under § 1983 only when execution of a municipal policy or custom, whether made by its lawmakers or by acts that may fairly be said to represent municipal policy, inflicts the claimed injury. See Monell at CT Page 11603 436 U.S. page 694. At oral argument the defendant town argued to permit this action would be akin to suing a town under Monell
theory for enforcing the state penal code or federal statutory law.
This is an interesting argument but the court believes it may miss the point of the plaintiff's claim. The plaintiff is not making an attack on the facial constitutionality of the State Health Code. She claims the Health Code as applied by town agents to her property results is a deprivation of her constitutional rights in that it deprives her totally of the economic use and benefit of her property. The court has already determined the status of Lustig and Kontout as municipal agents is a question of fact — it is also clear they had ultimate authority to act within their sphere of responsibility. If that issue is a question of fact that cannot be decided by the motion, the defendant cannot prevail on the present argument no matter how well drafted it is. In other words, if in fact Lustig and Kontout are town employees or agents for § 1983 purposes how can the court say the Brown test under Monell may not be met which says that liability can be imposed for a single decision attributable to a municipality where "the evidence that the municipality had acted and the plaintiff suffered a deprivation of federal rights also proved fault and causation."117 S.Ct. at p. 1389. That's what the plaintiff alleges here. To accept the defendant's argument would immunize towns from § 1983 liability when the claim goes to how or the manner in which they enforced state law not necessarily that they were enforcing state law. Or to put it another way, municipal officials have an obligation to enforce and comply with the provisions and protections of the federal constitution which operates at all times and applies whether they are enforcing town or state law; state law has to be applied and must be limited in its application by the dictates of federal constitutional requirements which town officials — if they are such — have a duty to obey independent of their duty to enforce particular state law. That window of opportunity provides the opportunity for a § 1983 action even though town officials purport to enforce a state law on health code. In effect, issues of fact prevent the granting of the summary judgment motion against this count.
(III)
In the fourth count of the amended complaint, the plaintiff CT Page 11604 makes a claim under Article First § 11 of the state constitution asserting that there has been an inverse condemnation in that, as a result of the action of town officials, no reasonable use of the property is allowed.
The defendant town has moved for summary judgment. It relies on Kelley Property Development, Inc. v. Lebanon 226 Conn. 314
(1993) which refused to recognize a damage remedy for people whose state constitutional due process rights under Article First § 8 of the state constitution have allegedly been violated by zoning officials. In Kelley the plaintiff developer sought damages for injuries sustained by a denial of a subdivision application. In language that can perhaps by construed as qualifying the broad assertion that no claim may be made under the state constitution. The court said: "As a general matter, we should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy." Id. page 339. In Kelley the court noted that the plaintiff could have appealed the action of the officials under § 8-8 of the General Statutes and he could have pursued other remedies such as an action for intentional interference with business expectancy or for equitable relief. A Bivens type action would run the risk of imposing enormous financial costs on zoning commissioners who are laypersons, encourage suits whenever zoning application are denied and might have a chilling effect on the zeal with which these local officials enforce the zoning laws. Id. pp. 341-342. See also Czap v. Town of Newton,
18 CONN. L. RPTR. 463, `96 Super. Lexis 3334 at 5.
The defendant argues that here there are adequate remedies; the plaintiff can and has sued town officials for negligent misrepresentation and breach of contract and appealed the actions of Kontout to the Department of Public Health and Addiction Services pursuant to statute.
The plaintiff does not dispute this law but notes that in our state a property owner can recover damages where the state or city engages in conduct which amounts to a taking. Textron, Inc.v. Wood, 167 Conn. 334, 344 (1974). Article First § 11 of our constitutes provides that: "The property of no person shall be taken for public use, without just compensation therefor." It is also clear that a taking can occur without actual physical appropriation of the land but where there is an interference with its use that in effect nullifies the value of the property or CT Page 11605 substantially abridges its enjoyment. See Wood at167 Conn. p. 346; also see Brecciaroli v. Commissioner of EnvironmentalProtection, 168 Conn. 349, 355 (1975). Connecticut also appears to recognize the right to recover damages for a temporary taking of property. Town of Trumbull v. Ehrsam, 148 Conn. 47, 50, 55
(1961).
Based on this characterization of the plaintiff's claim and having been presented with no factual claim supported by affidavits or other documents that a "taking" as asserted by the plaintiff did not occur, the court will deny the summary judgment motion as to the fifth count.
(IV)
The defendant town also relies on the immunity provisions of §§ 52-557n (b) (7) and (8) of the General Statutes. It is clear that this defense does not apply to the federal § 1983 claim — state grants of immunity cannot limit federal rights. Martinez v. California, 444 U.S. 277, 284 (1980).
But town argues that this statutory defense applies to the plaintiff's claim under the state constitution. However, the immunity provisions in subsection (b) of § 52-577 (n) apply only in this context of actions referred to in subsection (a) of the statute. None of the actions described in subsection (a) involve a "taking" claim under the state constitution. Query whether the state legislature can create immunity defenses to taking claims under Article First, § 11 of the state constitution when it does not explicitly reference the article or purport to create the particular immunities in order, for example, to expedite the handling of taking claims in general or allow for their more efficient and fair resolution. The state cannot even assert a sovereign immunity against an Article First § 11 claim. Textron, Inc. v. Wood, 167 Conn. at 342-43, how can the state legislature concoct statutory immunity so that municipalities can avoid damage claims for takings claimed to be violative of the constitutional provision?
The court does not accept this statutory immunity defense as a vehicle to preclude the plaintiff's claim under the state constitution.
Corradino, J. CT Page 11606