FREDERICK T. SULLIVAN *v.* THE BOARD OF POLICE
COMMISSIONERS OF THE CITY OF
WATERBURY ET AL.
(11896)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and BRENNAN, Js.

Argued March 8—decision released May 7, 1985

*Donald McPartland,* with whom, on the brief, was
*Gary B. O'Connor,* for the appellants-appellees (defend-
ants).

*Dennis M. Buckley,* for the appellee-appellant (plaintiff).

*Philip A. Murphy, Jr., Raymond P. Pech,* and *Juan Figueroa,* filed a brief as amici curiae (Connecticut Commission on Human Rights and Opportunities).

PETERS, C. J. This case concerns the effect of federal and state statutes forbidding age discrimination on the mandatory retirement provisions of a local charter. The plaintiff, Frederick T. Sullivan, brought suit against the Waterbury board of police commissioners and the Waterbury retirement board, to enjoin the defendants from forcing him to retire at age sixty-five from his position as superintendent of the Waterbury police department. The trial court agreed with the plaintiff that his mandatory retirement would violate both the federal Age Discrimination in Employment Act (ADEA); 29 U.S.C. § 621 et seq.;[1] and the Connecticut Fair Employment Practices Act (CFEPA); General Statutes § 46a-51 et seq.;[2] and issued an injunction barring the plaintiff's involuntary retirement. The defendants have appealed, and the plaintiff has cross appealed claiming a right to recover attorney's fees. We find error on the appeal and consequently dismiss the cross appeal as moot.

The relevant facts are undisputed. The plaintiff became superintendent of the Waterbury police depart-

---

[1] The ADEA provides in relevant part at 29 U.S.C. § 623: "EMPLOYER PRACTICES. (a) It shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

[2] The CFEPA provides in relevant part at General Statutes § 46a-60: "(a) It shall be a discriminatory practice in violation of this section: (1) For an employer . . . except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's . . . age . . . ."

ment in 1968. On September 11, 1981, he wrote to Waterbury mayor Edward Bergin, chairman ex officio of the defendant board of police commissioners, announcing his intention to remain police superintendent after October 21, 1981, the date of his sixty-fifth birthday. The mayor replied that the plaintiff would have to vacate his position on October 21, 1981, because § 2741 of the Waterbury charter makes retirement at the age of sixty-five mandatory for all police and fire personnel.[3] This lawsuit ensued.

Immediately upon the filing of the plaintiff's lawsuit on October 16, 1981, the trial court issued an ex parte temporary injunction, ordering the defendants to desist from attempting to remove the plaintiff from his position. After a full hearing, the trial court concluded: (1) that the ADEA was not unconstitutional in its application to state and local government employees; (2) that the defendants had failed to meet ADEA requirements for the establishment of a bona fide occupational qualification for discrimination based upon age; 29 U.S.C. § 623 (f) (1);[4] and (3) that the defendants had also failed

---

[3] Section 2741 of the Waterbury town charter provides: "Qualifications for retirement of fire and police participants.

"Any fire or police participant who has served as a member of the fire or police department for at least fifteen years, who has completed twenty-five years of service as a full-time employee of the City of Waterbury, and who has attained the age of fifty-five years shall, at his option, be eligible for retirement for service under the provisions of this act, and upon his written request to the board having jurisdiction and the retirement board of the City of Waterbury, shall be permanently retired. At the age of sixty-five it shall be mandatory that such member be retired from either of said departments, except that any such employee may be continued in service, from time to time, at the request of his department head and with the approval of the retirement board, but in no case after the attainment of the age of sixty-eight."

[4] 29 U.S.C. § 623 provides in relevant part: "(f) It shall not be unlawful for an employer . . . (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . ."

to meet CFEPA requirements for the establishment of a bona fide occupational qualification for discrimination based upon age; General Statutes § 46a-60 (a) (1).[5] Accordingly, the trial court granted the plaintiff's prayer for injunctive relief, barring his involuntary retirement "until a valid BFOQ (bona fide occupational qualification) is established excluding the plaintiff, or plaintiff exceeds the age protected by the statutes, plus taxable court costs but not attorney's fees." Throughout the pendency of these proceedings, the plaintiff has continued to serve as Waterbury police superintendent.

In this court, the defendants urge us to hold that they have established that being younger than sixty-five is a valid BFOQ for police personnel. They argue that the Waterbury charter provision is legal because it meets each of the two tests commonly applied to questions of age discrimination: the rational relation to public safety test and the two-tiered test permitting a general disqualification when either substantially all persons in the excluded class are incapable of performing the job or when it is highly impractical to make appropriate individual assessments of employability. They further claim that the trial court erred in failing to recognize that age is a per se BFOQ in this case because of special statutory provisions that apply to all employees engaged in police work. See 5 U.S.C. § 8335 (b);[6] General Statutes § 46a-60 (b) (1) (C).[7]

The plaintiff, on the other hand, maintains that the trial court correctly concluded that state and federal

---

[5] See footnote 2, supra.

[6] 5 U.S.C. § 8335 provides in relevant part: "(b) A law enforcement officer . . . shall be separated from the service on the last day of the month in which he becomes 55 years of age or completes 20 years of service if then over that age."

[7] General Statutes § 46a-60 provides in relevant part: "(b) (1) The provisions of this section concerning age shall not apply to . . . (C) the termination of employment of persons in occupations, including police work . . . in which age is a bona fide occupational qualification."

laws require an employer charged with age discrimination to demonstrate that a BFOQ is precisely tailored to the specific requirements of a particular employment situation. The plaintiff notes that in the context of discrimination based upon sex or physical disability, we have defined a BFOQ narrowly to permit such a defense only if "no member of the class excluded is physically capable of performing the tasks required by the job." *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 36, 357 A.2d 498 (1975); *Connecticut Institute for the Blind* v. *Commission on Human Rights & Opportunities,* 176 Conn. 88, 95, 405 A.2d 618 (1978). He argues further that federal law, which applies both by its terms to his ADEA claim; see 29 U.S.C. §§ 623, 630, 631; *EEOC* v. *Wyoming,* 460 U.S. 226, 234–44, 103 S. Ct. 1054, 75 L. Ed. 2d 18 (1983); cf. *Garcia* v. *San Antonio Metropolitan Transit Authority,* 469 U.S. , 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985); and as a persuasive resource for interpretation of our CFEPA; see *Wroblewski* v. *Lexington Gardens, Inc.,* 188 Conn. 44, 53, 448 A.2d 801 (1982); *Evening Sentinel* v. *National Organization for Women,* supra, 36–37; imposes strict constraints upon the establishment of a BFOQ. See generally 29 C.F.R. § 1625.6 (a). The Supreme Court of the United States has recently held, in an age discrimination case under the ADEA, that a BFOQ must reflect the requirements of the particular position which the claimant seeks to fill or to retain rather than those of the industry as a whole. *Trans World Airlines, Inc.* v. *Thurston,* 469 U.S. , 105 S. Ct. 613, 622, 83 L. Ed. 2d 523 (1985). In addition, the equal employment opportunity commission (EEOC) has adopted the detailed standards for testing a BFOQ defense formulated in *Usery* v. *Tamiami Trail Tours, Inc.,* 531 F.2d 224, 235–36 (5th Cir. 1976). See 29 C.F.R. § 1625.6 (b).

Resolution of the merits of these conflicting arguments about the appropriate definition of a BFOQ for age discrimination claims would present an issue of first impression for this court. That issue cannot, however, be reached in this case because of its procedural posture. It is familiar learning that this court lacks the jurisdiction to decide the merits of a case over which the trial court lacked jurisdiction, and that jurisdictional matters must be addressed whether or not the parties have raised them in their pleadings. *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984); *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979); *LaReau* v. *Reincke,* 158 Conn. 486, 494, 264 A.2d 576 (1969); *Foss* v. *Foss,* 105 Conn. 502, 512, 136 A. 98 (1927). In this case the trial court had no jurisdiction to hear the plaintiff's claim because of his failure to invoke his federal or state administrative remedies. That failure bars him from judicial remedy under both the ADEA and the CFEPA.

The plaintiff's complaint nowhere alleges that he gave notice of his age discrimination claim to the equal employment opportunity commission. The ADEA makes such notice a prerequisite to a private action. The ADEA provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Commission . . . . Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626 (d).[8] The purpose of the sixty day notice of intent

---

[8] 29 U.S.C. § 626 (d) provides in full: "FILING OF CHARGE WITH COMMISSION; TIMELINESS; CONCILIATION, CONFERENCE, AND PERSUASION "[CIVIL ACTIONS];

"No civil action may be commenced by an individual under this section

to sue requirement is two-fold: to afford an employer the opportunity, upon notification of a complaint, to take appropriate remedial action unilaterally, and to enable the EEOC to attempt to resolve the problem through informal conciliation or mediation in advance of litigation. *Bihler* v. *Singer Co.,* 710 F.2d 96, 99 (3d Cir. 1983); H.R. Conf. Rep. No. 950, 95th Cong., 2d Sess. 12 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 504, 534. While the provisions of 29 U.S.C. § 626 (d) have been interpreted flexibly in light of the remedial nature of the ADEA; see *Kephart* v. *Institute of Gas Technology,* 581 F.2d 1287, 1288–89 (7th Cir. 1978), cert. denied, 450 U.S. 959, 101 S. Ct. 1418, 67 L. Ed. 2d 383 (1981); *Edwards* v. *Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195, 1197–99 (5th Cir. 1975); Schlei & Grossman, Employment Discrimination Law (2d Ed. 1983), pp. 489–92; the complete failure to give notice to the EEOC bars the plaintiff's action under the ADEA. See *Whitfield* v. *Knoxville,* 756 F.2d 455, 460, 37 FEP Cases 288 (6th Cir. 1985); *Newcomer* v. *International Business Machines Corporation,* 598 F.2d 968 (5th Cir.), cert. denied, 444 U.S. 984, 100 S. Ct. 491, 62 L. Ed. 2d 413 (1979); *Bengochea* v. *Norcross, Inc.,* 464 F. Sup. 709, 711–12 (E.D. Pa. 1979).[9]

until 60 days after a charge alleging unlawful discrimination has been filed with the Commission. Such a charge shall be filed—

"(1) within 180 days after the alleged unlawful practice occurred; or

"(2) in a case to which section 633 (b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

"Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

For the text of 29 U.S.C. § 633 (b), see footnote 9, infra.

[9] 29 U.S.C. § 626 (d) imposes two requirements: (1) that the EEOC be notified 60 days before suit is brought and (2) that this notice be given within 180 days of the alleged discrimination, or, if the complainant also has a

The plaintiff's claim under the CFEPA is similarly flawed because of his failure to file a claim of discrimination with the Connecticut commission on human rights and opportunities (CHRO). The provisions of the CFEPA that prohibit discriminatory employment practices; General Statutes §§ 46a-58 through 46a-81; must be read in conjunction with the act's provisions for the filing of complaints concerning alleged discriminatory practices with the CHRO. General Statutes §§ 46a-82 through 46a-96. Section 46a-83 (a) provides: "After the filing of any discriminatory practice complaint, the chairman of [the CHRO] shall refer the same to a com-

state remedy, within 300 days of the alleged discrimination. See footnote 8, supra. The lower federal courts are divided on the question of whether failure to meet these requirements deprives a court of jurisdiction to hear an ADEA claim. Compare *Kennedy* v. *Whitehurst,* 690 F.2d 951, 961 (D.C. Cir. 1982) (provisions of § 626 (d) are "subject to waiver, estoppel and equitable tolling") with *Downey* v. *Southern Natural Gas Co.,* 649 F.2d 302, 304 (5th Cir. 1981) (180-day deadline is a " 'prerequisite' to filing suit"). While the majority position seems to be that untimely notice may be excused upon a showing of sufficient equitable grounds; see, e.g., *Wright* v. *Tennessee,* 628 F.2d 949, 952–53 (6th Cir. 1980), and cases cited therein; no court has held that notice to the EEOC may be dispensed with entirely. Deadlines for notification based on the date of the alleged discrimination serve a different policy than requiring notice before suit is brought. The former protects employers against stale claims; the latter encourages pre-litigation settlements. Although the policy behind the deadline rules can be readily harmonized with principles of waiver, estoppel and tolling, the policy behind the notice of intent to sue rule can be implemented only through strict enforcement, for once a lawsuit is filed that policy is unalterably frustrated. See *Ewald* v. *Great Atlantic & Pacific Tea Co.,* 620 F.2d 1183, 1187–88 (6th Cir. 1980), cert. denied, 451 U.S. 985, 101 S. Ct. 2319, 68 L. Ed. 2d 843 (1981); *Bengochea* v. *Norcross, Inc.,* 464 F. Sup. 709, 712 (E.D. Pa. 1979).

We also note that the plaintiff's ADEA claim is affected by 29 U.S.C. § 633 (b), which provides: "In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated." See *Oscar Mayer & Co.* v. *Evans,* 441 U.S. 750, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979).

missioner or investigator to investigate and if the commissioner or investigator determines after the investigation that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion.'' If these informal procedures prove unsuccessful, the CHRO must certify the complaint, hold a hearing and order appropriate relief. General Statutes §§ 46a-84, 46a-86. Thereafter, any party aggrieved by a final order of the CHRO may appeal to the Superior Court. General Statutes § 46a-95 (j).

Read in its entirety, the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO. It is the CHRO that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination. That the act does not provide an unconditional private right of action for claimants like the plaintiff is underscored by the terms of General Statutes § 46a-99, which expressly provides such a direct right of action when the allegedly discriminatory employer is a state agency. The plaintiff, having failed to follow the administrative route that the legislature has prescribed for his claim of discrimination, lacks the statutory authority to pursue that claim in the Superior Court. See *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588, 424 A.2d 285 (1979); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 357–59, 377 A.2d 1099 (1977).

Although we have recognized that in exceptional circumstances a claimant may bypass administrative remedies in favor of direct judicial action, the plaintiff's complaint does not fall within the narrow reach

of the recognized exceptions. Resort to administrative remedies is not required when the administrative remedy is plainly inadequate. *Conto* v. *Zoning Commission,* 186 Conn. 106, 115, 439 A.2d 441 (1982); *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979). The CHRO, however, had the power not only to petition the Superior Court for temporary injunctive relief; General Statutes § 46a-89; but also to issue orders for permanent affirmative and negative injunctive relief, which are enforceable in the Superior Court. General Statutes §§ 46a-86 and 46a-95. The CHRO therefore had authority to afford the plaintiff the same relief that he was awarded by the trial court. Invocation of administrative remedies may also be excused when the issue presented for adjudication is beyond the competency of the agency to determine. *Mathews* v. *Diaz,* 426 U.S. 67, 76–77, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976); *Greenberg* v. *Bolger,* 497 F. Sup. 756, 772 (E.D.N.Y. 1980); cf. *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979). The question of the scope of a BFOQ defense to discriminatory employment practices is, however, squarely within the ambit of the expertise of the CHRO. It has the capacity to draw appropriate factual inferences about employability and to develop legal classifications for permissible disqualifications from employment.[10]

In sum, this plaintiff had available to him administrative remedies that could have afforded him meaningful relief under the federal and state statutes that govern his claim of age discrimination. His failure to

---

[10] The CHRO filed a brief amicus curiae in this appeal in which it urged that the trial court's judgment be upheld. The agency subsequently filed a motion that addressed the plaintiff's failure to exhaust state administrative remedies and that purported to waive this requirement. Because the CHRO is not a party in the appeal, the motion was dismissed. See Practice Book § 3098. Without in any way deprecating the motives of the CHRO, we cannot permit a brief amicus curiae and an improper motion to serve as a substitute for an agency investigation, hearing, and determination.

notify the EEOC and to bring his complaint to the CHRO forecloses his access to judicial relief, because it deprived the trial court of jurisdiction to hear his complaint. See *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 598, 409 A.2d 1029 (1979). The trial court, therefore, erred in not sua sponte dismissing the plaintiff's cause of action.

There is error on the appeal, the judgment is set aside and the case is remanded with direction to dismiss the plaintiff's complaint. The plaintiff's cross appeal is dismissed as moot.

In this opinion the other judges concurred.