[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Francisco Hernandez, brought suit against his former employer, the Standard Mattress Company ("Standard Mattress"). The five-count amended complaint filed January 22, 1992 arises from the termination of plaintiff's employment by Standard Mattress on January 20, 1989.
Specifically, the plaintiff alleges that his discharge: (1) violated Title VII of the Civil Rights Act of 1964 (count one): (2) breached an express contract of employment (count two); (3) breached an implied contract of employment (count three); (4) breach of the defendant's implied covenant of good faith and fair dealing (count four); (5) and a claim of intentional infliction of emotional distress. The pertinent paragraphs of the complaint are set out below.
The first count of the amended complaint, provides, inter alia:
6. During the course of his employment, the plaintiff was subjected to differential terms and conditions of employment because of his Hispanic origin, including harassment not experienced by whites similarly situated, criticism not otherwise accorded to whites, and unwarranted production/work output criteria not applied to whites.
8. The defendant, through its agents, servants and/or employees, discharged the plaintiff after twenty-two (22) years of employment for lack of performance. The aforesaid discharge was pretextual and the aforesaid discharge, in fact, arose from the defendant's planned and considered course of discriminatory practice against the plaintiff arising from his Hispanic origin and the plaintiff's efforts to protect himself and other Hispanics from discriminatory employment practices.
13. This complaint is filed in accordance with Title VII of CT Page 7567 the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.,
 including 42 U.S.C. § 2000e-2 and 2000e-3, . . . and is filed to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 2000e et seq. providing for injunctive relief and other relief against racial, religious [sic], national origin and sex discrimination in employment.
The second count of the amended complaint, provides, inter alia:
5. The defendant breached its express contract of employment with the plaintiff as contained in the plaintiff's Employee Handbook . . .
The third count of the amended complaint, provides, inter alia:
5. The defendant breached its implied contract of employment with the plaintiff, including, but not limited to the representations and conditions of employment contained in the plaintiff's Employee Handbook . . .
The fourth count of the amended complaint, provides, inter alia:
5. The defendant breached its implied covenant of good faith and fair dealing, including, but not limited to the representations and/or conditions of employment contained in the plaintiff's Employee Handbook . . .
The fifth count of the amended complaint, provides, inter alia:
9. The defendant, Standard Mattress Company, through its agents, servants and/or employees, knew or should have known that the termination of the plaintiff under the pretext of poor job performance, where the actual reasons for the plaintiff's termination were due to the plaintiff's race and national origin, would cause the plaintiff extreme emotional distress.
The plaintiff in his prayer for relief seeks, among other damages, punitive damages.
Standard Mattress filed a motion to strike the first and fifth count on November 26, 1991. At short calendar it withdrew the motion as to the fifth count because the fifth count had been amended. The fifth count is now as it appears above. Therefore, this court is only considering the motion to strike CT Page 7568 the first count of the complaint.
In the first count the plaintiff alleges that he was discriminated against because of his Hispanic origin. Connecticut's Fair Employment Practices Act ("CFEPA"), Connecticut General Statutes 46a-60, et seq., prohibits employment discrimination based on race, color and national origin. General Statutes 46a-60 provides, inter alia: (a) It shall be a discriminatory practice in violation of this section:
(1) For an employer, by himself or his agent, except in the case of bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including but not limited to, blindness;
An analysis of CFEPA makes it clear that it creates a comprehensive administrative procedure for investigating and redressing complaints of racial discrimination such as plaintiff has brought in the present action.
The Connecticut Supreme Court in Sullivan v. Board of Police Commissioner, 196 Conn. 208, 491 A.2d 1096 (1985), stated:
 Read in its entirety, the CFEPA not only defines important rights designed to rid the workplace of discrimination, but also vests first-order administrative oversight and enforcement of these rights in the CHRO. It is the CHRO that is charged by the act with initial responsibility for the investigation and adjudication of claims of employment discrimination. That the act does not provide an unconditional private right of action for claimants like the plaintiff is underscored by the terms of General Statutes 46a-99, which expressly provides such a direct right of action when the allegedly discriminatory employer is a state agency. The plaintiff, having failed to follow the administrative route that the legislature has prescribed for his claim of discrimination, lacks the statutory authority to pursue that claim in the Superior Court. See Connecticut Mobile Home Assn., Inc. v. Jensen's Inc., 178 Conn. 586, 588, 424 A.2d 285 (1979); Connecticut Life Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352, 357-59, 377 A.2d 1099 (1977). CT Page 7569
Sullivan, supra, 216.
The United District Court for the District of Connecticut in Napoleon v. Xerox Corp., 656 F. Sup. 1120 (D.Conn. 1987), stated;
 [T]he plaintiff has an explicit state statutory remedy for the defendant's alleged misconduct under the comprehensive procedural provisions of the Connecticut Fair Employment Act ("CFEPA"), Conn. Gen. Stat. 46a-51 et seq. Under these circumstances, the plaintiff may not circumvent the CFEPA by the assertion of private cause of action. See Powell v. Feroleto Steel Co., 659 F. Sup. 303, 304-305
(D.Conn. 1986) (TFGD). As stated in Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 480 A.2d 610
(1984):
 when an allegation is made with respect to a protected category under the Fair Employment Practices Act . . ., the exclusive remedy is in the procedures established by the act, and there is no cause of action for a private lawsuit.
 Id. at 60, 480 A.2d 610. See also Sullivan v. Board of Police Commissioners, 196 Conn. 208, 216, 491 A.2d 1096
(1985) (the CFEPA does not provide claimants with a private right of action unless the discriminatory employer is a state agency); accord Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 647 (1985).
Napoleon, supra, 1125 (footnotes omitted).
Accordingly, for the above reasons, the plaintiff has available to him administrative remedies that could afford him meaningful relief under the federal and state statutes that govern his claim of race discrimination. His failure to bring his complaint to the CHRO forecloses his access to judicial relief, because it deprives this court of jurisdiction for lack of exhaustion of administrative remedies. Astarita v. Liquor Control Commission, 165 Conn. 185-189. See Sullivan, supra.
Accordingly, a judgment of dismissal sua sponte may enter as to the first count for lack of jurisdiction. Blake v. Baldwin Piano and Organ Co., 186 Conn. 295, 297-298; Woodmont Assn. v. Milford, 85 Conn. 517-524.
The motion to strike the claim for punitive damages in the prayer for relief is granted. CT Page 7570
To furnish a basis for recovery of such damages, the pleadings must allege and the evidence must show wanton or wilful malicious conduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought. Markey v. Santangelo, 195 Conn. 76, 77.
Burns, J.