[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE (#112)
I. FACTS
This action arises from a sequence of events that ended on CT Page 9524 November 5, 1993, with the termination of the plaintiff's employment with Wal-Mart Stores, Inc. ("Wal-Mart"). On September 16, 1994, the plaintiff, Joseph Luth, filed a six count revised complaint against Wal-Mart and a manager at Wal-Mart, Jeffrey W. Shreck. The revised complaint alleges the following facts.
On March 16, 1993, Wal-Mart hired the plaintiff to work at one of its department stores. Upon employment, the plaintiff was advised that he would be placed on probation for his first 90 days, during which time his performance, attitude, and adherence to company policies would be closely supervised. Moreover, during the 90-day probationary period, Wal-Mart could terminate the plaintiff's employment with or without prior notice; however, after the 90-day probationary period expired, Wal-Mart could only terminate the plaintiff for good cause provided the plaintiff received prior notice.
On March 22, 1993, six days after Wal-Mart hired the plaintiff, Wal-Mart promoted the plaintiff within the Hardlines Department from "Stocker" to "Team Leader." Wal-Mart furnished to the plaintiff a corresponding pay raise with the promotion. About 2 months later, in May 1993, the plaintiff received another pay raise after a favorable job review.
In September 1993, Wal-Mart offered the plaintiff another promotion from Team Leader of the Hardlines Department to Team Leader of the Freezer Department. The plaintiff, however, prior to his employment with Wal-Mart, suffered personal injuries to his neck and head, and thus, realized that repeated exposure to changing temperatures could adversely affect his health. Concerned, the plaintiff asked Shreck whether Wal-Mart would view a decision to decline a promotion to the Freezer Department negatively, thereby damaging the plaintiff's opportunity to advance within the company.
Shreck assured the plaintiff that his decision to decline the promotion to Freezer Department would not adversely affect his standing with the company. The plaintiff therefore informed Shreck about his injuries and requested permission to remain Team Leader in the Hardlines Department, or in the alternative, to be placed as a Team Leader in another department. Shreck advised the plaintiff that he could not remain the Team Leader in the Hardlines Department and that he could not be a Team Leader in any other department other than the Freezer Department. Although disappointed, the plaintiff, relying upon Shreck's representation CT Page 9525 that Wal-Mart would not view negatively a decision to decline the promotion, agreed to accept a demotion and pay cut, promising to work hard to regain his position as Team Leader and achieve his ultimate goal of receiving a managerial position with Wal-Mart. Shreck assured the plaintiff that he would be given every reasonable opportunity to regain his position as Team Leader as soon as another position opened. The plaintiff was accordingly demoted, with a corresponding pay cut, to Stocker in the Center Section Department.
The plaintiff continued to work hard. Shreck later informed the plaintiff that he was being trained for the position of Team Leader in the Center Section Department. Approximately one month later, the plaintiff fell ill and was unable to attend work for3-4 days because of a sinus infection, during which time he consulted a physician who prescribed antibiotics. After returning to work, on November 5, 1993, Shreck called the plaintiff into the Manager's Office, where Shreck told the plaintiff for the first time that his job performance was unsatisfactory. Shreck told the plaintiff that as a result of his poor job performance, his employment was terminated effective immediately.
The plaintiff asked Shreck for an explanation. Shreck failed to explain the perceived problems with the plaintiff's work. Instead, much to the plaintiff's embarrassment, the plaintiff was taken to his locker for his possessions and then escorted off the premises. Prior to his termination, the plaintiff was never warned in any manner that his job performance was substandard.
Thereafter, the plaintiff filed a six count revised complaint against Wal-Mart and Shreck alleging breach of contract, negligent misrepresentation, negligent infliction of emotional distress, promissory estoppel, breach of implied covenant of good faith, and wrongful discharge, respectively. On November 22, 1994, the defendants filed a motion to strike the second, third and sixth counts on the ground of legal insufficiency. The defendants filed a memorandum of law in support of the motion to strike. On March 22, 1995, the plaintiff filed a memorandum of law in opposition.
II. DISCUSSION
The function of a motion to strike "is to test the legal sufficiency of a pleading." Ferryman v. Groton, 212 Conn. 138,142, 561 A.2d 432 (1989), citing Practice Book § 152. In CT Page 9526 reviewing the legal sufficiency of a plaintiff's complaint, the trial court must "assume the truth of the facts alleged and construe them in the light most favorable to sustaining the sufficiency of the complaint." Bouchard v. People's Bank,219 Conn. 465, 467, 594 A.2d 1 (1991). The motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v. CBS, Inc., 196 Conn. 91,108, 491 A.2d 368 (1986). Rather, "[t]he allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Id., 108-09.
Here, the defendants move to strike the second, third and sixth counts of the revised complaint. Each will be discussed separately.
A. Second Count — Negligent Misrepresentation
The defendants move to strike the second count of the revised complaint on the ground that the allegations are insufficient to state a claim for negligent misrepresentation. The defendants claim that the second count fails to set forth all the necessary elements for negligent misrepresentation. First, the defendants argue that the second count does not allege that the defendants failed to exercise reasonable care or competence in making the alleged misrepresentation. Second, the defendants argue that the plaintiff has not alleged that he relied on the defendants' misrepresentation.
The Connecticut Supreme Court long has recognized liability for negligent misrepresentation. D'Ulisse-Cupo v. Board ofDirectors, 202 Conn. 206, 217, 520 A.2d 217 (1987). The tort of negligent misrepresentation has been set forth as follows: "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Id., 218, quoting Restatement (Second) of Torts, § 552 (1979).
The defendants' first argument is that the second count fails to allege that the defendants failed to exercise reasonable care CT Page 9527 or competence in communicating the misrepresentation. The Connecticut Supreme Court has stated that a plaintiff is not required to use that exact language in order to allege that the defendants failed to exercise reasonable care and competence. Id., 220. Indeed, the Court stated that an allegation that `the defendants negligently misrepresented the facts to the plaintiff' necessarily implies that the defendants did not exercise reasonable care or competence in communicating the information to the plaintiff. Id, 220.
In the present case, in paragraph 28 the plaintiff alleges that "[t]he representations of the plaintiff's Manager were false or inaccurate, and said Manager (and accordingly the defendant, WAL-MART) knew or should have known at the time that said representations were made that they were false or inaccurate." Revised Complaint, ¶ 28. This allegation claims that the defendants negligently misrepresented the facts to the plaintiff and it necessarily implies that the defendants did not exercise care or competence in communicating the facts contained therein.D'Ulisse-Cupo v. Board of Directors, 202 Conn. 220. Accordingly, the court finds that the plaintiff has alleged that the defendants failed to exercise care and competence in communicating the facts.
The defendants next argue that the plaintiff has failed to allege that he relied upon the defendants' misrepresentation. The defendants argue that although the plaintiff alleges in paragraph 29 that he relied on the defendants' representations, the plaintiff has also alleged in paragraph 10 that "[a]s a result of the . . . permanent injuries [to his neck and head] and [the] conditions [in the Freezer Department], the plaintiff believed that the repeated exposure to changing temperatures necessarily inherent in working within the Freezer Department would adversely affect his health; accordingly, the plaintiff advised his Manager, the defendant, JEFFREY W. SHRECK, of the existence of his head and neck conditions, and requested the opportunity to remain as the Team Leader in the Hardlines Department, or alternatively to be made Team Leader in another department other than the Freezer Department." Revised Complaint, ¶ 10. Thus, the defendants argue that paragraph 10 establishes that the plaintiff did not in fact rely upon the alleged misrepresentations of the defendants, but instead decided to decline the promotion to the Freezer Department before the alleged misrepresentations based upon the adverse working conditions in the freezer and the effect they would have on his CT Page 9528 health.
In reviewing the legal sufficiency of a pleading, the trial court must "assume the truth of the facts alleged and construe them in the light most favorable to sustaining the sufficiency of the complaint." Bouchard v. People's Bank, supra, 219 Conn. 467. Construed most favorably to the plaintiff, paragraph 10 simply states that the plaintiff believed that the freezer conditions would adversely affect his health and requested an alternative transfer. Paragraph 10 sets forth the facts that led the plaintiff to ask Shreck if Wal-Mart would hold it against the plaintiff that he decided to decline the freezer position. This construction is consistent with the other allegations in the second count. For instance, paragraph 27 alleges that Shreck assured the plaintiff that Wal-Mart would not hold a decision to decline the promotion against him and that every reasonable opportunity would be afforded to the plaintiff to allow him to regain his position of Team Leader. The plaintiff alleges that he relied on this representation in making his decision to decline the promotion.
Therefore, construed most favorably to the plaintiff, paragraph 10 simply sets forth the facts that led the plaintiff to ask Shreck if Wal-Mart would hold it against an employee if he or she decided to decline a promotion. Accordingly, the court finds that the plaintiff has alleged facts sufficient to demonstrate that he relied on the defendants' misrepresentations.
B. Third Count — Negligent Infliction of Emotional Distress
The defendants argue that the third count alleging negligent infliction of emotional distress must be stricken because the plaintiff's injury is covered by the Worker's Compensation Act. The defendants argue that where an injury is covered by the Worker's Compensation Act, common law tort recovery is prohibited.
The Worker's Compensation Act provides that "[a]n employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . . All rights and claims between employer and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter . . . ." General Statutes § 31-284(a). Effective July CT Page 9529 1, 1993, however, the legislature expressly excluded from the scope of the Worker's Compensation Act a personal injury that is "[a] mental or emotional impairment which results from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination." General Statutes § 31-275(16)(B)(iii).
In the third count, the plaintiff has alleged that "[t]he defendant, WAL-MART's conduct, in demoting the plaintiff, reducing his pay and thereafter terminating his employment based upon alleged unsatisfactory job performance, was unreasonable and involved an unreasonable risk of causing emotional distress, and said defendant knew or should have known that such distress might result in illness or bodily harm." Revised Complaint, ¶ 31. Clearly, in the third count the plaintiff is seeking redress for an alleged mental or emotional impairment caused by a personnel decision. Accordingly, the court finds that the third count is not prohibited by the Worker's Compensation Act.
C. Sixth Count — Wrongful Discharge
In the sixth count the plaintiff sets forth a cause of action for common law wrongful discharge claiming that the defendants terminated his employment on account of his physical disabilities in violation of important public policies embodied in General Statutes § 46a-58 et seq., and Title 42, United States Code, § 12101 et seq. The defendants move to strike the sixth count claiming that the plaintiff has an adequate statutory remedy to address his alleged disability discrimination, and thus, the common law action is prohibited. The plaintiff, however, argues that courts have permitted the statutory and common law remedies to co-exist. In fact, the plaintiff argues that the plaintiff is exercising his statutory rights. In his Memorandum of Law In Opposition To Defendants' Motion To Strike, the plaintiff informs the court that, pursuant to General Statutes § 46a-82, the plaintiff has filed a discrimination complaint with the Commission on Human Rights and Opportunities (CHRO). (Plaintiff's Memorandum, p. 12). The plaintiff further informs the court that the complaint is still pending.
In light of the assertions by the plaintiff that there is a discrimination complaint pending with the CHRO, the court cannot address the defendants' motion to strike the sixth count because it lacks subject matter jurisdiction over the claim. While the court cannot consider facts outside the pleading for the purposes CT Page 9530 of a motion to strike; See Liljedahl Bros., Inc. v. Grigsby,215 Conn. 345, 348, 576 A.2d 149 (1990) (In deciding a motion to strike the trial court cannot be aided by the assumption of any facts not alleged in the pleadings); the court is obligated to raise a motion to dismiss sua sponte when it is apprised of facts that defeat its jurisdiction over the subject matter. Sullivan v.Board of Police Commissioners, 196 Conn. 208, 218, 491 A.2d 1096
(1985).
The superior court has subject matter jurisdiction over a cause of action claiming employment discrimination practices provided that: (1) the plaintiff timely files a discrimination complaint with the CHRO in accordance with General Statutes §46a-82; and, (2) the plaintiff obtains a release from the commission to file suit in the superior court. General Statutes §§ 46a-100 and 46a-101. Failure to obtain a release from the commission to file suit in the superior court deprives the superior court of subject matter jurisdiction. See Sullivan v.Board of Police Commissioners, supra, 196 Conn. 216 (failure to follow the statutory guidelines deprives superior court of subject matter jurisdiction).
The plaintiff's statement to this court in its brief that his complaint with the CHRO is still pending is fatal to the court's subject matter jurisdiction. If the commission granted the plaintiff a release to file suit in the superior court, the plaintiff's complaint with the commission would not still be pending. "Upon granting a release, the commission shall dismiss or otherwise administratively dispose of the discriminatory practice complaint pending with the commission without cost or penalty assessed to any party." General Statutes § 46a-101(d). Since the plaintiff states that the complaint is still pending, it follows that the commission has not granted the plaintiff a release to file suit in the superior court. Accordingly, the court declines to address the defendants' motion to strike the sixth count because the court lacks jurisdiction over the subject matter of the sixth count.
III. CONCLUSION
The court finds that the plaintiff has alleged facts sufficient to state a cause of action for negligent misrepresentation and negligent infliction of emotional distress. Accordingly, the defendants' motion to strike the second and third counts is denied. CT Page 9531
The court further finds that the plaintiff has failed to obtain a release from the CHRO to file his employment discrimination suit with the superior court. Accordingly, the court declines to consider the defendants' motion to strike the sixth count because it lacks subject matter jurisdiction. The court therefore dismisses the sixth count for lack of subject matter jurisdiction.
So ordered.
Michael Hartmere Judge of the Superior Court