**Denise M. DEMBINSKI, Plaintiff,**

v.

**PFIZER, INC., Defendant.**

**No. 3:08CV00541 (DJS).**

United States District Court,
D. Connecticut.

June 18, 2009.

Denise Bevza, Bevza & Brennan, LLC, New London, CT, for Plaintiff.

Tanya Ann Bovee, William Joseph Anthony, Jackson Lewis, Hartford, CT, for Defendant.

### *MEMORANDUM OF DECISION AND ORDER*

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Denise M. Dembinski ("the Plaintiff"), brings this action[1] against the defendant, Pfizer, Inc. ("the Defendant") alleging sex, age, race, and national origin discrimination; sexual harassment; retaliation; aiding and abetting; and discriminatory advertising in violation of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. §§ 46a–60 *et seq.* ("CFE-PA"). The Plaintiff also alleges that the Defendant retaliated against her in violation of the whistleblower protections of Conn. Gen.Stat. § 31–51m; breached an implied contract and the implied covenant of good faith and fair dealing; and negligently inflicted emotional distress upon her. The Defendant now moves to dismiss

some of the Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that hereafter follow, the Defendant's motion to dismiss (**dkt. # 32**) is **GRANTED in part and DENIED in part.**

### I. FACTS

The following facts are alleged in the amended complaint. The Plaintiff, a Caucasian woman over the age of fifty, was an employee of the Defendant. The Defendant is a Delaware corporation with its headquarters in New York City and a facility located in New London, Connecticut, where the Plaintiff worked. The Plaintiff worked for the Defendant from 1985 until January 9, 2007, when she was placed on medical disability. Her most recent position with the Defendant was Associate Analyst.

The Plaintiff's supervisor was a Hispanic woman named Antonette Alonso ("Alonso"). In 2003, Alonso employed her niece, Siobhan Maldonado ("Maldonado"), who is also Hispanic, as her personal assistant. According to the Plaintiff, Alonso "replaced the Plaintiff's job duties" by taking Maldonado (instead of the Plaintiff) to various trade association conferences even though the Plaintiff was a registered member of the association and Maldonado was not experienced in videoconferencing, audio conferencing, and event coordination. Alonso also hired a Hispanic man, Julio Mundo ("Mundo"), first as a contractor and then as an employee, and ultimately promoted him to a position above the Plaintiff's.

The Plaintiff alleges that in August 2005, Alonso asked the Plaintiff to falsify her expense account for some meeting by including expenses for a three-night stay at

---

1. The Plaintiff filed this case in the Connecticut Superior Court for the Judicial District of New London at New London. The Defendant thereafter removed the case to federal court pursuant to 28 U.S.C. § 1332.

the Stonington Inn, when the Plaintiff had, in fact, stayed at home and commuted to the meeting. The Plaintiff reported this to Jane Wiltshire ("Wiltshire"), the Groton/New London CIT Site Head. Wiltshire told the Plaintiff to report this incident to Patricia Brown ("Brown"), the HR Representative. The Plaintiff did so report to Brown.

The Plaintiff maintains that Alonso, after learning that the Plaintiff had complained about her, became outraged and began a pattern of harassing the Plaintiff. This alleged harassment from Alonso included: (1) forbidding the Plaintiff from attending conferences of which she was a long-term member; (2) removing the Plaintiff's job duties and reassigning those duties to Maldonado and Mundo, who lacked the necessary experience for those duties; (3) in August 2006, informing the Plaintiff that the Defendant would be eliminating the Plaintiff's position "sometime during the second quarter of 2007"; and (4) in December 2006, giving to the Plaintiff a sexually offensive "gift," namely a calendar with scantily-clad women and offensive comments.

With regard to the calendar, the Plaintiff alleges that she reported this incident to Park Hersant, the Associate Director, who in turn reported the incident to Richard Nosseck ("Nosseck"), a VP within the Plaintiff's department. The Defendant's response to this incident was that it did not believe that the gift of the calendar constituted sexual harassment. The Defendant thus did not act in response to this incident.

The Plaintiff maintains that the Defendant has never treated a male employee in a similar manner. The Plaintiff further asserts that, because of the above-mentioned discrimination, harassment, and retaliation, she became ill and was placed on medical leave on January 9, 2007. She filed a charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on June 12, 2007. According to the Plaintiff, after she filed the CHRO charge, the Defendant retaliated against her by altering the price and requirements for health, vision, and dental insurance, causing such insurance to be too costly for her to afford.

## II. DISCUSSION

The Defendant now moves to dismiss: (1) some of the Plaintiff's age, gender, national origin, and race discrimination, retaliation, aiding and abetting, and discriminatory advertisement claims for being untimely; and (2) the Plaintiff's negligent infliction of emotional distress claim for failure to state a claim on which relief can be granted. The Plaintiff opposes the motion to dismiss, arguing that these claims do not fail as a matter of law. The Court shall discuss the parties' arguments seriatim.

## A. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss seeks dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). "The issue on a motion to dismiss is not whether the plaintiff will pre-

vail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn. 1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

## B. TIMELINESS

■ CFEPA does not provide an unconditional private right of action for plaintiffs, who must exhaust the administrative requirements against the parties named in the complaint. *See Sullivan v. Bd. of Police Comm'n*, 196 Conn. 208, 216, 491 A.2d 1096 (1985). That is to say, plaintiffs are bound to follow Conn. Gen.Stat. § 46a–82, whereby they must file a complaint with, and receive a release of jurisdiction from, the CHRO before bringing suit in court. *See Sullivan*, 196 Conn. at 215–16, 491 A.2d 1096. A CHRO complaint "must be filed within one hundred and eighty days after the alleged act of discrimination...." Conn. Gen.Stat. § 46a–82(f).

The Plaintiff filed her CHRO complaint on June 14, 2007. As a result, any factual allegations that occurred prior to the 180–day time period, i.e., before December 14, 2006,[2] cannot be used to support the Plaintiff's discrimination or retaliation claims. From what the Court can discern in the amended complaint, the earliest incident that seems timely is Alonso's giving of the calendar to the Plaintiff, which, based on the Plaintiff's CHRO complaint, occurred on December 22, 2006.

■ That being said, the allegations regarding Alonso's telling the Plaintiff to falsify an expense account, and Alonso's informing the Plaintiff that her position would be eliminated,[3] are time-barred as discreet acts of discrimination or retaliation because each occurred prior to December 14, 2006. On the other hand, with regard to the allegations that Alonso forbade the Plaintiff from attending conferences or removed the Plaintiff's job duties and reassigned them to Maldonado and Mundo, the Court is hesitant at this time to find that such allegations either are or are not time-barred because the amended complaint provides no dates for these incidents. The Court presumes that the specifics regarding these incidents will arise through the discovery process. If the Defendant comes to believe that these incidents are also time-barred, it is free to raise this argument in a summary judgment motion. For now, the Defendant moves the Court to dismiss as untimely any discrimination or retaliation claim that occurred outside CFEPA's time require-

2. The Defendant states that this date is December 16, 2006. The Plaintiff's CHRO complaint, however, appears to be dated June 12, 2007, and December 14, 2006 is 180 days prior to June 14, 2007.

3. The Plaintiff argues that because Alonso had indicated that the Plaintiff's position would be eliminated in 2007, her allegation is timely here. The discreet act complained of here, however, is Alonso's statement, which was made in August 2006. Indeed, at the time Alonso made the statement, the 2007 event had not occurred. Rather, "the second quarter of 2007" was simply a potential date for the elimination of the Plaintiff's position. It does not, and cannot, constitute a discreet act in this case, especially considering that there is no allegation in the amended complaint that Alonso's statement came to be true, i.e., that the Plaintiff's position was terminated in 2007. The incident whereby Alonso made the statement, which occurred in August 2006, is time-barred and cannot be considered for the Plaintiff's discrimination or retaliation claims.

ments, i.e., prior to December 14, 2006.[4] The Defendant's motion in this regard is granted.

## C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

■ The Defendant next argues that the Plaintiff did not exhaust her administrative remedies for her CFEPA aiding and abetting and discriminatory advertising claims. As the Defendant points out, the Plaintiff was required to bring these claims in her CHRO complaint. Upon review of the Plaintiff's CHRO complaint, it does not appear that she did so. Thus, her claims fail on this basis. In addition, with regard to the aiding and abetting and discriminatory advertising claims, the Plaintiff does not specifically address the Defendant's argument in her opposition memorandum. Thus, even if the claims did not fail for the reason above, the Court would deem them to be abandoned. Consequently, with regard to the Plaintiff's CFEPA aiding and abetting and discriminatory advertising claims, the Defendant's motion to dismiss is granted.

■ With regard to the allegation regarding the Defendant's retaliatory changing of the price and requirements for in-surance, the Defendant argues that the Plaintiff "failed to amend her CHRO charge" to include this allegation. The Court is not persuaded here. The Plaintiff's allegation is that the Defendant retaliated against her for filing her CHRO complaint, and that this retaliation occurred after she received her right-to-sue letter from the CHRO. As this Court has noted previously, "[a] district court may hear time-barred … CFEPA claims that are based on conduct subsequent to the administrative charge which is 'reasonably related' to conduct alleged in the administrative charge." *O'Hazo v. Bristol–Burlington Health Dist.*, 599 F.Supp.2d 242, 254 (D.Conn.2009) (citing *Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401–04 (2d Cir.1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir.1998)). In the Second Circuit,

> There are three types of claims that courts will find are "reasonably related" to [those] asserted in an administrative filing: (1) claims where the conduct complained of would fall within the scope of the administrative investigation; (2) claims alleging retaliation by an employer against an employee for filing an administrative charge; and (3) claims

---

4. The Court notes, though, that courts distinguish between "discreet acts" and "ongoing violations." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 118, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). For substantive discrimination and retaliation claims, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061. On the other hand, hostile work environment claims (e.g., sexual harassment claims) can constitute a "continuing violation," for which the Court may consider incidents beyond the statutory time restrictions so long as the Plaintiff filed her CHRO complaint within 180 days of any act that is part of the hostile work environment.

*See Wilks v. Elizabeth Arden, Inc.*, 507 F.Supp.2d 179, 191 (D.Conn.2007). Thus, when the Plaintiff maintains that the wrongful treatment she endured was "ongoing," the Court assumes that she is talking about her sexual harassment claims, because for discrimination or retaliation claims, it does not matter whether the wrongful conduct was ongoing; if an act is time-barred, it is not saved by being part of being an "ongoing" pattern. As such, the Court's discussion here addresses CFEPA's time restraint only insofar as it affects the Plaintiff's discrimination or retaliation claims. This decision does not touch upon the Plaintiff's sexual harassment claims.

where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the administrative charge.

*Id.* (citing *Butts,* 990 F.2d at 1402–03).

■ At a minimum, the Plaintiff's claim alleges retaliation arising out of her filing of the CHRO complaint, the second type of "reasonably related" claim for which plaintiffs need not amend their administrative complaints. Thus, even though the Plaintiff did not address this issue in her opposition memorandum, the Court finds the Defendant's argument to be unpersuasive. Consequently, with regard to the Plaintiff's allegation regarding the Defendant's retaliatory changing of the price and requirements for insurance, the Defendant's motion to dismiss is denied.

## D. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

■ Under Connecticut common law, "in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 446, 815 A.2d 119 (2003) (internal quotation marks omitted). The Connecticut Supreme Court has held, however, that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Perodeau v. City of Hartford,* 259 Conn. 729, 750, 792 A.2d 752 (Conn.2002) (citing *Parsons v. United Tech. Corp.,* 243 Conn. 66, 88, 700 A.2d 655 (1997)). In reviewing such claims, "[t]he dispositive issue [is] whether the defendant's conduct during the termination process was *sufficiently wrongful* such that the defendant should

have realized that its conduct involved an unreasonable risk of causing emotional distress and that [that] distress, if it were caused, might result in illness or bodily harm." *Id.* at 751, 792 A.2d 752 (emphasis in original) (internal quotation marks omitted). "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Parsons,* 243 Conn. at 88–89, 700 A.2d 655 (internal quotation marks omitted).

■ Based on this standard, the Plaintiff has failed to state a claim upon which relief can be granted. The Plaintiff argues that, in August 2006, Alonso told the Plaintiff that the Defendant would be eliminating her position in 2007. As a matter of law, this is insufficient to support a negligent infliction of emotional distress claim. Merely informing an employee that her position is being terminated is not unreasonable conduct in the course of the termination process. The Plaintiff then goes on to argue that, after the notice of the termination of her position had been given, Alonso "sexually harassed the Plaintiff by giving her an offensive ... calendar...." (Dkt. # 36, p. 11.) For the purposes of a negligent infliction of emotional distress claim, however, the Plaintiff cannot simply point to any conduct that she finds to be wrongful. Rather, the wrongful conduct must arise during the termination process. There is nothing indicating that the "gift" of the calendar had anything whatsoever to do with the elimination of the Plaintiff's position.

Indeed, upon review of the complaint, there is no allegation that the Plaintiff's position was, in fact, eliminated, nor is there an allegation that the Defendant ter-

minated the Plaintiff's employment. The Plaintiff was placed on medical leave, but this is not the same as saying that she was terminated or that her position was eliminated. Absent any allegation of any wrongful conduct during the course of the Plaintiff's termination, or absent any allegation that the Defendant even terminated the Plaintiff at all, the negligent infliction of emotional distress claim fails as a matter of law. Consequently, with regard to the Plaintiff's negligent infliction of emotional distress claim, the Defendant's motion to dismiss is granted.[5]

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss **(dkt. # 32)** is **GRANTED in part and DENIED in part.**

**(A) The Court hereby DISMISSES the following:**

(1) any age, sex, race, or national origin discrimination or retaliation claim based on an alleged discreet act that occurred prior to December 14, 2006 (Count One);

(2) the Plaintiff's CFEPA aiding and abetting and discriminatory advertising claims (Count One); and

(3) the Plaintiff's negligent infliction of emotional distress claim (Count Four).

**(B) The following shall proceed:**

(1) any age, sex, race, or national origin discrimination or retaliation claim based on an alleged discreet act that occurred on or after December 14, 2006 (Count One);

(2) the Plaintiff's sexual harassment claim (Count One);

(3) the Plaintiff's claim regarding the Defendant's alleged retaliatory changing of the price and requirements for insurance (Count One);

(4) the Plaintiff's whistleblower claim (Count Two); and

(5) the Plaintiff's breach of implied contract and breach of the implied covenant of good faith and fair dealing claims (Count Three).

---

**5.** The Plaintiff argues that because *Perodeau* involved an at-will employment relationship, and because she is claiming that she had a contractual relationship with the Defendant, *Perodeau's* holding does not control here. The Court is not persuaded. There is no language in *Perodeau* stating that its holding is limited to at-will employment relationships. Now, determining what is "unreasonable con- duct" in the termination process might be affected by the type of relationship between an employee and employer (i.e., what is reasonable conduct in an at-will relationship might not be reasonable in a contractual relationship). Nonetheless, standard of "unreasonable conduct in the termination process" applies in either situation.